# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**VAUGHN MATHIS,**              :

          **Petitioner**         :     **CIVIL ACTION NO. 3:23-225**

   **v.**                     :        **(JUDGE MANNION)**

**JOHN RIVELLO, Superintendent**   :
**of SCI Huntingdon, *et al.*,**

                                     :

        **Respondents**

## <u>MEMORANDUM</u>

This action originated with *pro se* Petitioner Vaughn Mathis ("Mathis")'s petition for a writ of habeas corpus under 28 U.S.C. §2254 in which he challenged a May 2022 decision by the Pennsylvania Board of Probation and Parole ("Parole Board") to deny him parole. Mathis has notified the Court that the Parole Board has since twice denied him parole in August 2023 and August 2024. The Court has construed Mathis's notifications as motions to amend his petition to challenge his most recent parole denials. The Court will grant those motions only insofar as they relate to the August 2024 parole denial. Nevertheless, for the reasons stated below, the Court will deny Mathis's amended Section 2254 petition.

FILED
SCRANTON

FEB 18 2025

PER_____ JKC _____
DEPUTY CLERK

## I.    BACKGROUND

Mathis is serving an aggregate sentence of state incarceration for a minimum of seventeen-and-a-half (17 ½) years to a maximum of forty-four (44) years arising from his multiple convictions in three (3) criminal cases in the Court of Common Pleas of Allegheny County in the late 1990s. (Docs. 1 at 1; 11-1 at 38–41.) The background of these cases and the aggregation of Mathis's sentences in each of them has been described as follows:

> . . . At Allegheny County No. CC9309514, [Mathis] pled guilty to violating the Uniform Firearms Act (VUFA) by carrying a firearm without a license and altering or obliterating marks or identification on a firearm.[1] The trial court sentenced [Mathis] to serve a two-year term of probation ending on February 4, 1996. While still on probation, [Mathis] was charged with multiple additional unrelated crimes.
>
> A detainer was issued, and [Mathis] subsequently was incarcerated pending disposition of the new charges. By this time, [Mathis's] original term of probation on the VUFA offenses had expired. On December 4, 1997, [Mathis] was convicted of the new charges (discussed below). Thereafter, the Commonwealth brought [Mathis] before the trial court for a probation violation hearing which resulted in revocation of probation. The trial court then sentenced [Mathis] to two and one-half to five years of incarceration on the VUFA charges. In an unpublished memorandum filed September 8, 1999, th[e Pennsylvania Superior] Court affirmed on direct appeal at No. 621 Pittsburgh 1998. [The Pennsylvania] Supreme Court denied allowance of appeal on January 14, 2000. *See Commonwealth v. Mathis*, 747 A.2d 416 (Pa. Super. 1999), *appeal denied*, 561 Pa. 671, 749 A.2d 468 (2000) (unpublished memoranda).

---

[1] 18 Pa. C.S.A. §§6106 and 6117, respectively.

- 2 -

On September 8, 1995, [Mathis] and his accomplice forced their way into a woman's house at gunpoint. When the victim was unable to satisfy the demands made of her, [Mathis's] accomplice pushed her down the cellar steps. [Mathis] pistol whipped the victim, then held his weapon to the woman's head while his accomplice literally ripped the clothing from her body and sexually assaulted her. Before departing, [Mathis's] accomplice smashed the victim's head against a set of concrete steps. A jury convicted [Mathis] of aggravated assault, burglary, recklessly endangering another person (REAP), unlawful restraint and terroristic threats, at Allegheny County No. 9600306.[2] On February 2, 1998, the trial court imposed an aggregate term of imprisonment of six to twenty years, to be served consecutively to the sentence imposed on the weapons offenses discussed above. [The Superior Court] affirmed the judgment of sentence on August 17, 2000, in an unpublished memorandum filed at No. 453 Pittsburgh 1998. The Pennsylvania Supreme Court denied allowance of appeal on March 27, 2001. *See **Commonwealth v. Mathis**, 764 A.2d 1126 (Pa. Super. 2000), appeal denied, 565 Pa. 667, 775 A.2d 804 (2001) (unpublished memoranda).

Tragically, while the above cases awaited disposition, [Mathis] killed a fourteen-month-old baby. On January 11, 1997, at approximately 8:50 p.m., [Mathis] fired his weapon into a vehicle containing three people, striking a toddler in the head as the young child sat beside his three-year-old brother in the back seat of the parents' automobile. [Mathis] was charged with multiple offenses at Allegheny County Nos. CC199701667 and CC199701808. On September 17, 1997, a jury convicted [Mathis] on one count each of involuntary manslaughter and VUFA (carrying a firearm without a license), and three counts of REAP (predicated on the fact that there were three people in the vehicle and thus there were three separate victims).[3]

---

[2] 18 Pa. C.S.A. §§ 2702, 3502, 2705, 2902 and 2706, respectively.

[3] 18 Pa. C.S.A. §§2504, 6106 and 2705, respectively.

On October 22, 1997, the trial court sentenced [Mathis] to serve consecutive terms of imprisonment of two and one-half to five years on the involuntary manslaughter conviction, three and one-half to seven years for the VUFA conviction and one to two years for each count of REAP. The aggregate sentence of nine to eighteen years was imposed consecutively to the sentences [Mathis] was already serving. Th[e Superior Court] affirmed the judgment of sentence on September 7, 1999, at No. 2480 Pittsburgh 1997. [Mathis] did not file a cognizable petition for allowance of appeal with the Pennsylvania Supreme Court nor did he pursue a writ of *certiorari* before the United States Supreme Court.[]

(*Id.* (footnotes and bold text in original)).

Mathis's minimum sentence expired on July 23, 2014, and his maximum sentence date is January 23, 2040. (Doc. 11-1 at 3.) Since the expiration of his minimum sentence, the Parole Board denied Mathis parole in 2014, 2016, 2017, 2018, 2019, and 2020. (*Id.* at 48–65.)

On May 4, 2022, the Parole Board again denied Mathis parole, and he was listed for review on or after April 2023. (*Id.* at 66–68.) In denying Mathis parole for the seventh time, the Parole Board listed the following reasons for denying him parole:

YOUR RISK AND NEEDS ASSESSMENT INDICATING YOUR LEVEL OF RISK TO THE COMMUNITY.

REPORTS, EVALUATIONS AND ASSESSMENTS/LEVEL OF RISK INDICATES YOUR RISK TO THE COMMUNITY.

THE NEGATIVE RECOMMENDATION MADE BY THE PROSECUTING ATTORNEY.

- 4 -

(*Id.* at 67.) The Parole Board also indicated that it would consider whether he maintained a favorable recommendation from the Commonwealth of Pennsylvania Department of Corrections ("DOC") and a clear conduct record at his next parole interview. (*Id.*)

Mathis challenged his May 2022 parole denial by filing a petition for review with the Pennsylvania Commonwealth Court on August 25, 2022. (*Id.* at 71.) He then filed an amended petition for review with the Commonwealth Court on November 8, 2022. (*Id.* at 74–118.)

In the amended petition for review, Mathis generally argued that the Parole Board violated his substantive due process rights by arbitrarily and capriciously denying him parole. (*Id.* at 75.) Mathis indicated that he believed that Parole Board was improperly focusing on his "politically charged[] and publicly inflamed" involuntary manslaughter conviction even though he had only fired his gun in a "desparate [sic] attempt to ward off his assailants by returning gun fire, and consequently (and most regrettably) a fragment from a stray bullet fatally injured said innocent child." (*Id.* at 75–76.) He also asserted that he believed his sentences were "illegally aggregated since [he] was not sentenced by the same court and the same judge." (*Id.* at 77.) Overall, Mathis contended as follows:

> [T]he [Parole] Board is not exercising its discretion according to statute, standard, and practices, but rather accommodating

- 5 -

persuasions to allow victim's input in a case that has an expired
sentence. Essentially, the overlapping structure of [his] sentence
is being taken advantage [sic] where the [Parole] Board is
accommodating the circumvention of due process.

(*Id.* at 77–78.)

Mathis also criticized his parole denials prior to the May 2022 denial.
As to his parole denial in 2014, he argued that the Parole Board incorrectly
stated that "his institutional behavior, including reported misconducts at
minimum date review" was a reason to deny him parole, even though he
"had been free of misconducts for 13 years, which earned him housing on
an honor unit." (*Id.* at 78 (capitalization omitted); *see also id.* at 49).
Concerning his 2016 denial of parole, Mathis asserted that the Parole Board
"conducted a bogus interview" and indicated as a reason for denying parole
that he lacked remorse even though he wrote letters to the victim's family to
"express his deep remorse." (*Id.* at 79.) Regarding his 2017 parole denial,
Mathis contended that during his parole interview, the interviewing Parole
Board member asked him questions about crimes he was either not charged
with or acquitted of, as such, "[t]he questioning . . . was based on
misinformation and/or diversionary in tactic and intent to arbitrarily deny [him]
parole." (*Id.* at 79–80.) Turning to his 2018 parole denial, Mathis criticized
the Parole Board for listing the severity of the crime as a reason to deny
parole because his sentence for involuntary manslaughter should have

- 6 -

expired at the time of his parole review. (*Id.* at 80.) In addition, the Parole Board listed his unsatisfactory parole supervision history even though he was never on parole; instead, he committed another offense while serving probation. (*Id.*)

As for his 2019 parole denial, Mathis claimed that during his interview with the Parole Board's Chairman, the Chairman told Mathis that he was ready for parole, but the other Board Members were unwilling to parole him until he served twenty-five (25) years. (*Id.* at 81.) At the time, Mathis had been incarcerated for twenty-two (22) years. (*Id.*) The Chairman also proposed to Mathis that he could take a "1-year 'hit' or a 3-year 'hit', at which time the Chairman would give [Mathis] his recommendation for parole." (*Id.*) Mathis claimed to have accepted the "3-year 'hit'" because he would need another three (3) years to reach the twenty-five (25) years he needed so the other Board Members would agree to parole him. (*Id.*) As a result, he was denied parole in April 2019, with the Parole Board once again mistakenly listing his parole supervision history as a reason to deny him parole. (*Id.*) The Parole Board also listed the nature of the crime as a reason, which was improper because only deliberate or planned conduct should be considered, and his conduct was "circumstantial." (*Id.* at 81–82.)

Concerning his 2020 parole denial, Mathis complained that he was "arbitrarily denied . . . a legitimate review" because the Board Member who interviewed him told him that "the hearing is 'unofficial.[']" (*Id.* at 82–83.) The Parole Board also gave "redundant reasons" for denying parole. (*Id.* at 83.)

When he addressed his May 2022 parole denial, Mathis indicated that he had done what the Parole Board asked him to do insofar as he maintained a favorable recommendation for parole from the DOC, a clear conduct record, and waited the three (3)-year period recommended by the Chairman. (*Id.* at 83, 86.) However, the Parole Board denied parole in part because the Board recommended that he receive "educational/vocational programming," despite him maintaining a clear conduct record since 2001 and spending over twenty (20) years in vocational training in various jobs while incarcerated, such as a plumber, an HVAC technician, and power plant mechanic. (*Id.* at 83 (capitalization omitted)). Mathis had also obtained college credits from "Pitt University." (*Id.*)

Additionally, even though Mathis was listed in the "low-medium" risk range in the instrument the Parole Board uses to assess an inmate's risk to the community, the Parole Board listed his "level of risk to the community" as a reason to deny him parole. (*Id.* at 86–87.) Mathis contended that this reason was "unsubstantiated and meritless as a matter of fact" insofar as he

successfully completed his programming and maintained his outside clearance status, which is indicative that he is a low risk to the community. (*Id.* at 87.) Mathis also asserted that he contacted the prosecuting attorney, and the attorney's "response suggested that there was not a recommendation made by her office." (*Id.*) Therefore, Mathis believes that the underlying, but unstated, reason why he was denied parole, was due to his involuntary manslaughter conviction. (*Id.* at 87–88.)

On February 7, 2023, the Commonwealth Court dismissed Mathis's amended petition for review. (*Id.* at 120–21.) After pointing out that Mathis's contention that his sentences were illegally aggregated was incorrect, the Commonwealth Court explained its reasons for dismissing the amended petition for review as follows:

> Petitioner fails to plead facts sufficient to establish a right to the relief he requests. An inmate has no right to parole, and the denial of parole is not subject to judicial review. *Rogers v. Pa. Bd. of Prob. & Parole*, 724 A.2d 319 (Pa. 1999); *Weaver v. Pa. Bd. of Prob. & Parole*, 688 A.2d 766 (Pa. Cmwlth. 1997). The reasons set forth in the parole denial decisions were not only permissible considerations, but statutorily required considerations. 61 Pa. C.S. §6135; *Weaver*. The Court will not look behind facially valid reasons stated in a parole denial decision. *Weaver*. Petitioner fails to allege that the parole denial was based on constitutionally impermissible criteria. *Burkett v. Love*, 89 F.3d 135 (3d Cir. 1996); *Block v. Potter*, 631 F.2d 233 (3d Cir. 1980).

(*Id.* at 121.)

Prior to the Commonwealth Court's decision, on January 23, 2023, Mathis filed the instant Section 2254 petition and a supporting memorandum of law.[4] (Docs. 1, 2.) In the petition, Mathis raises three (3) claims challenging the Parole Board's denial of parole. First, he argues that the Parole Board violated his substantive due process rights because it failed to follow the "statutory standards" for considering parole insofar as it is primarily focused on his involuntary manslaughter conviction instead of looking at the totality of factors that should have been considered. (Docs. 1 at 5; 2 at 4–5.) Second, he contends that the Parole Board's denial of parole was arbitrary and constitutionally impermissible because the Parole Board Chairman told him that the other Board Members would not grant him parole until he reached twenty-five (25) years' incarceration and "allude[d] to the fact that the Board [w]as essentially increasing [Mathis's] punishment due to the nature and circumstances" of his involuntary manslaughter conviction. (Docs. 1 at 6–7; 2 at 6–7.) He also points out that the Parole Board filed preliminary objections

---

[4] Although the Clerk of Court did not docket Mathis's habeas petition until February 7, 2023, Mathis declared that he placed it in the prison mail system for mailing on January 23, 2023. (Doc. 1 at 14.) Pursuant to the federal prisoner mailbox rule, the Court deems the petition to be filed as of January 23, 2023. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (concluding that prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk").

to his petition for review in the Commonwealth Court in which the Board referenced charges for which he was acquitted. (Doc. 2 at 8–9.) He believes that this shows that the Parole Board is essentially punishing him for crimes he did not commit. (*Id.* at 9.) Third, and finally, Mathis asserts that his substantive due process rights "are being violated by the exercise of power without reasonable justification in the service of a legitimate governmental objective" because the Parole Board keeps denying him parole in part because of his negative supervision on parole, despite him having never been on parole. (Docs. 1 at 8; 2 at 10–12.) He also believes that the Parole Board's reference him being a risk to the community is "unsubstantiated" because his conduct and activities since his incarceration should "suggest parole." (Doc. 2 at 11.) Furthermore, Mathis believes that the victims from his involuntary manslaughter conviction "have the political influence to sway [Parole] Board decision[-]makers in this particular case." (*Id.*). Based on these three (3) claims, Mathis seeks his immediate release from incarceration because it will "ensure that [he] is not subjected to further arbitrariness or vindictiveness." (Docs. 1 at 14; 2 at 12.)

On April 4, 2023, the Court issued an Order directing Respondents to file a response to Mathis's habeas petition. (Doc. 5.) After receiving an extension of time, Respondents filed their response in opposition to the

habeas petition on May 16-17, 2023. (Docs. 10, 11.)[5] In their response, Respondents contend that (1) the Court should dismiss the petition due to Mathis's failure to exhaust his state-court remedies insofar as he did not appeal from the Commonwealth Court's dismissal of his petition for review to the Pennsylvania Supreme Court (Docs. 11 at 3–6; 11-2 at 3–6); (2) Mathis has failed present a viable procedural due process claim because he does not possess a liberty interest in parole (Docs. 11 at 7–9; 11-2 at 6–8); and (3) Mathis has failed to demonstrate a substantive due process right because he has not included any factual allegations showing that the Parole Board relied on anything outside of the Prisons and Parole Code (61 Pa. C.S. §6135) in denying him parole or "that can otherwise be described as 'conscience shocking'" (Docs. 11 at 9–11; 11-2 at 9–11).

Mathis filed a reply brief to Respondents' response in opposition to his habeas petition, which the Clerk of Court docketed on June 2, 2023. (Doc. 12.) Approximately two-and-a-half (2 ½) months later, Mathis filed an "Addendum in Support of Writ of Habeas Corpus Proceeding Under 28 U.S.C. §2254," in which he, *inter alia*, indicated that the Parole Board had denied him parole on August 1, 2023. (Doc. 13 at 2, 8.) Mathis also challenged this parole denial in his submission. (*Id.* at 1–7.)

---

[5] It appears that Respondents docketed their response twice.

On October 28, 2024, Mathis filed a "Motion for Judicial Review Pursuant to the Administration [sic] Procedure Act 5 U.S.C.S. §702," in which he informed the Court that the Parole Board denied him parole again on August 20, 2024. (Doc. 16 at 2, 7.) He also attached a copy of the Parole Board's written decision, which stated as follows:

> FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PRISONS AND PAROLE CODE, THE PAROLE BOARD, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOU ARE DENIED PAROLE/REPAROLE. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:
>
> REPORTS, EVALUATIONS AND ASSESSMENTS/LEVEL OF RISK INDICATES YOUR RISK TO THE COMMUNITY.
>
> THE NATURE OF YOUR CRIME.
>
> YOU ARE TO BE REVIEWED IN OR AFTER SEPTEMBER 2025.
>
> AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:
>
> WHETHER YOU HAVE MAINTAINED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE DEPARTMENT OF CORRECTIONS.
>
> WHETHER YOU HAVE MAINTAINED A CLEAR CONDUCT RECORD.

(*Id.* at 6.) Mathis challenges this denial of parole based on his previously asserted arguments concerning the Parole Board's inaccurate risk

- 13 -

assessment and over-emphasis on the nature of his "crime," which he interprets as a reference to his involuntary manslaughter conviction. (*Id.* at 1–4.)

## II.    LEGAL STANDARDS

### A.    Challenges to Parole Denials Under Section 2254

A challenge to the denial of parole is cognizable under Section 2254. *See Coady v. Vaughn*, 251 F.3d 480, 486 (3d Cir. 2001) (determining that jurisdiction to entertain state prisoner's habeas petition challenging denial of parole lies under Section 2254 and not 28 U.S.C. §2241). However, a federal district court may not grant parole or determine parole eligibility. *See Billiteri v. U.S. Bd. of Parole*, 541 F.2d 938, 944 (2d Cir. 1976). Instead, "[t]he only remedy which the court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of non-compliance, the court can grant the writ of habeas corpus and order the prisoner discharged from custody." *Id.*; *see also Bridge v. U.S. Parole Comm'n*, 981 F.2d 97, 105 (3d Cir. 1992) (explaining that "the relief a court may grant [from a parole denial] is limited").

### B.    Due Process Challenges to Parole Denials

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const.

amend. XIV § 1. "[T]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," nor has the Commonwealth of Pennsylvania created such a right. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *see also Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) (recognizing general principle that Pennsylvania's parole statute does not create a liberty interest in the right to be paroled); *Coady v. Vaughn*, 770 A.2d 287, 289 (Pa. 2001) ("It is undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the board have a corresponding duty to grant the same.").

"Since a discretionary decision of the Parole Board denying an inmate early parole does not implicate any constitutionally [or state] protected liberty interest, the scope of federal judicial review of these decisions is necessarily quite limited." *Diehl-Armstrong v. Pa. Bd. of Prob. & Parole*, No. 13-cv-2302, 2014 WL 1871509, at *5 (M.D. Pa. May 7, 2014). The role of a federal court is confined to reviewing the substance of the state parole decision to determine whether the Parole Board exercised its authority in an arbitrary and capricious, or constitutionally impermissible manner. *See Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980).

To show a violation of substantive due process, a habeas petitioner must demonstrate that: (1) they were arbitrarily denied parole due to impermissible reasons such as race, religion, or political beliefs, and/or (2) the Parole Board failed to apply appropriate, rational criteria in reaching its determination to deny parole. *See id.* at 236; *Bonsall v. Gillis*, 372 F. Supp. 2d 805, 807 (M.D. Pa. 2005). "However, federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady*, 251 F.3d at 487. The "relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'" *Hunterson v. DiSabato*, 308 F.3d 236, 247 (3d Cir. 2002) (citation omitted).

## III.   DISCUSSION

Mathis generally argues that the Parole Board violated his substantive due process rights in denying him parole on several occasions. In resolving Mathis's claims, the Court will first discuss how the Parole Board's two (2) decisions to deny Mathis parole occurring after he filed his petition in this case, impact this case, as well as Mathis's apparent request to amend his petition to include a challenge to these most-recent denials of parole. The

- 16 -

Court will then address Respondents' argument that Mathis failed to exhaust his administrative remedies. Finally, the Court will address the merits of Mathis's claims.

### A.    The Impact of the Parole Board's Denials of Parole Occurring After Mathis Filed His Section 2254 Petition in This Case

Since Mathis filed his habeas petition in this case, the Parole Board denied him parole on August 1, 2023, and August 20, 2024. Due to the Parole Board's August 20, 2024 denial of parole, Mathis's challenges to his denials of parole from 2014 through 2023 are moot. *See Pullium v. Bd. of Prob. and Parole*, No. 1:22-cv-140, 2024 WL 3445462, at *2 (W.D. Pa. June 26, 2024) ("In many habeas cases, the crucial issue with respect to mootness is whether 'some concrete and continuing injury other than the now-ended incarceration or parole' might still be amenable to remedy. *Spencer*[ v. *Kemma*, 523 U.S. 1, 7 (1998)]. In other words, there still may be a case or controversy before the court – even if the injury that a complaining party seeks to remedy through litigation no longer exists – if there is a 'collateral injury' that is 'likely to be redressed by a favorable judicial decision.' *Id.* (quoting *Lewis*[ v. *Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)]); *Burkey*[ v. *Marberry*, 556 F.3d 142, 147–51 (3d Cir. 2009)]. This is not the case, however, in the context of a parole denial or calculation. Rather, because the

only relief that a court can grant in such circumstances is a new parole hearing, a subsequent hearing held by the Parole Board renders an inmate's challenge to the prior parole decision moot."); *Sims v. Mahally*, No. 3:17-cv-1647, 2018 WL 5718498, at *3 (M.D. Pa. Nov. 1, 2018) ("The Parole Board has issued its most recent decision to deny Petitioner parole on January 11, 2017; therefore, to the extent that Petitioner challenges the Parole Board's decisions to deny him parole [in 2008, 2009, 2010, 2011, 2012, 2013, and 2015], these claims have been rendered moot." (citations omitted)); *Brown v. Kauffman*, No. 18-cv-89, 2018 WL 4087551, at *4 (E.D. Pa. Aug. 9, 2018) ("[S]ince the appropriate remedy would have been a new hearing before the Board, and because Brown has since had another hearing, any challenge to the prior denial is now moot." (citations omitted)), *report and recommendation adopted*, 2018 WL 4054329 (E.D. Pa. Aug. 23, 2018). Nevertheless, the Court has construed Mathis's "Motion for Judicial Review Pursuant to the Administration [sic] Procedure Act 5 U.S.C.S. §702" (Doc. 16) as a motion to amend his habeas petition to include a challenge to the Parole Board's August 20, 2024 denial of parole. The Court concludes that the interests of justice warrant granting this motion because, *inter alia*, dismissing the instant case and requiring Mathis to start again with a new habeas petition would not be judicially efficient and Mathis's arguments and

Respondents' responses thereto (insofar as Mathis repeats arguments he made in his original habeas petition) are already part of the record. *See Miller v. Zaken*, No. 1:21-cv-2130, 2024 WL 1621902, at *8 (M.D. Pa. Apr. 15, 2024) ("Amendment of habeas corpus petitions is governed by Federal Rule of Civil Procedure 15."); 28 U.S.C. §2242 (providing that habeas applications "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

## B.    Failure to Exhaust

Respondents argued that the Court should dismiss Mathis's original habeas petition because he did not fully exhaust his state-court remedies before filing it insofar as he did not file a petition for allowance of appeal to the Pennsylvania Supreme Court following the Commonwealth Court's dismissal of his petition for review. The circumstances have changed somewhat regarding Mathis's August 20, 2024 denial of parole because Mathis does not allege that he filed a challenge to the denial with the Commonwealth Court. Despite these changed circumstances, the Court's resolution of Respondents' argument does not change because Mathis did not have an obligation to exhaust state-court remedies prior to filing his Section 2254 petition in this Court.

While a Pennsylvania state prisoner filing a habeas petition under Section 2254 is ordinarily required to fully exhaust their state-court remedies prior to filing their petition, the Third Circuit Court of Appeals in *DeFoy v. McCollough*, concluded that a state prisoner challenging the denial of parole on constitutional grounds, other than asserting an *ex post facto* claim, is not required to exhaust state-court remedies prior to filing a habeas petition. *See* 393 F.3d 439, 445 (3d Cir. 2005) ("[W]e conclude that claims of constitutional violations in the denial of parole in Pennsylvania need not be presented to the state courts via a petition for writ of mandamus in order to satisfy the requirement of exhaustion."). In *DeFoy*, the Third Circuit determined that the Commonwealth Court's decision in *Weaver v. Pennsylvania Board of Probation & Parole*, 688 A.2d 766, 771–72 (Pa. Commw. 1997), which "held that mandamus is not available to a prisoner denied parole based upon a constitutional error by the parole board," was "the best indication of how the Pennsylvania Supreme Court would resolve the issues" raised in the case. *Id.* at 444. Respondents argue that this Court should no longer follow *DeFoy* because since that decision, the Commonwealth Court has issued numerous decisions stating that state prisoners can file constitutional challenges to Parole Board denials of parole in mandamus actions in the Commonwealth Court's original jurisdiction. *See* (Doc. 11-2 at 4–5 (citing cases)). The most

recent of those cases appears to be *Toland v. Pennsylvania Board of Probation and Parole*, where the Commonwealth Court held that "under [its] precedent, both *ex post facto* and due process challenges [to the Parole Board's denial of parole] may be raised in a mandamus action." 263 A.3d 1220, 1233 (Pa. Commw. 2021). Respondents also point out that Mathis challenged his May 2022 parole denial by filing a petition for review with the Commonwealth Court, which addressed it, even though it was ultimately dismissed. (*Id.* at 6.)

This Court recognizes that some district courts in the Third Circuit have questioned "[t]he continuing validity of *DeFoy*." *Begandy v. Pa. Bd. of Prob. and Parole*, No. 19-cv-639, 2021 WL 1986415, at *4 (W.D. Pa. May 18, 2021) (citing *Bradley v. Wingard*, No. 15-cv-235, 2017 WL 11476608, at *2 (W.D. Pa. Oct. 12, 2017), *report and recommendation adopted*, 2018 WL 10150909 (W.D. Pa. Sept. 5, 2018)); *see also Purcell v. Pa. Parole Bd.*, No. 3:23-cv-311, 2024 WL 5340671, at *2 (W.D. Pa. Jan. 10, 2024) (indicating that habeas petitions challenging denials of parole "are unexhausted and can be dismissed on that ground alone [under Rule 4 of the Rules Governing Section 2254 Cases] because [*DeFoy*] is no longer good law"), *report and recommendation adopted*, 2025 WL 240959 (W.D. Pa. Jan. 17, 2025). In doing so, those district courts essentially follow the same reasoning as

Respondents' argument here, *i.e.*, *DeFoy* no longer applies because the Pennsylvania caselaw it relied upon in concluding that there was no mandamus remedy for constitutional challenges has changed to the contrary over the almost twenty (20) years since it was decided. *See, e.g., Bowman v. Brittan*, No. 23-cv-2092, 2024 WL 5050028, at *1 n.2 (E.D. Pa. Oct. 21, 2024) ("Based upon *Toland*, which *DeFoy* could not consider since it had yet been decided, it is clear that Petitioner had an available state court remedy; hence, he was required to comply with the exhaustion requirement.").

While these other decisions choosing not to follow *DeFoy* are possibly correct concerning the change in Pennsylvania law recognizing that Pennsylvania inmates now have a state-court remedy they can exhaust concerning their parole-denial claims because the Commonwealth Court has recognized that constitutional claims, including due process challenges, can be raised through a petition for a writ of mandamus, the fact remains that *DeFoy* is a precedential Third Circuit decision that remains binding on this Court under principles of vertical *stare decisis. See Pease v. Lycoming Engines*, No. 4:10-cv-843, 2011 WL 6339833, at *22 n.35 (M.D. Pa. Dec. 19, 2011) ("*Stare decisis* requires district courts to follow the binding precedents of higher courts."); *Hernandez v. Johnson & Johnson Consumer Inc.*, No. 19-cv-15679, at *3 (D.N.J. Mar. 24, 2023) ("As this is a federal district court in

New Jersey, it is duty-bound to follow precedent set forth by the Third Circuit, the federally recognized circuit in which this Court sits." (citations omitted)); *UTI Corp. v. Fireman's Fund Ins. Co.*, 896 F. Supp. 362, 379 (D.N.J. 1995) ("[A]s a federal district court, we are bound by the pronouncements of the Third Circuit Court of Appeals."); *see also Hutto v. Davis*, 454 U.S. 370, 375 (1982) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts . . . ."); *cf. United States v. Higdon*, 638 F.3d 233, 247 (3d Cir. 2011) ("[N]either this court, nor any other court, can tolerate a situation where a judge decides to follow his/her own custom and concepts of justice rather than the precedent of the applicable appellate court or the United States Supreme Court. Ours is a nation of laws, not judges."), *abrogated on other grounds by Rehaif v. United States*, 588 U.S. 225 (2019). In addition, in 2012, the Third Circuit recognized that the Commonwealth Court had "adjudicated mandamus actions involving parole denials by the Board and [had] considered constitutional claims other than *ex post facto* claims," and yet still decided that "to the extent there has been any shift in Pennsylvania law, we cannot comfortably say that it is clear enough to alter our decision in *DeFoy*." *Roman v. DiGuglielmo*, 675 F.3d 204, 209 (3d Cir. 2012).

In deciding not to disturb *DeFoy*, the Third Circuit explained that:

> The availability of Pennsylvania mandamus review for inmates challenging the denial of their parole on non-ex *post facto* grounds remains unsettled. Though certain courts since *DeFoy* have demonstrated some willingness to consider constitutional claims outside the ex *post facto* context, none have addressed or acknowledged the language that drove our reading of *Coady*. *See Nieves v. Pa. Bd. of Prob. & Parole*, 995 A.2d 412, 418 (Pa. Commw. Ct. 2010) (substantive due process and ex *post facto*); *Wilson v. Pa. Bd. of Prob. & Parole*, 942 A.2d 270 (Pa. Cmwlth. Ct. 2008) (Fifth Amendment in context of sexual offender rehabilitation program); *Dodgson v. Pa. Bd. of Prob. & Parole*, 922 A.2d 1023, 1026 (Pa. Commw. Ct. 2007) (due process, equal protection, Fifth Amendment, court access and ex *post facto*); *Nickson v. Pa. Bd. of Prob. & Parole*, 880 A.2d 21, 23 (Pa. Commw. Ct. 2005) (Eighth Amendment). *But see Nieves*, 995 A.2d at 421–22 (Leavitt, J., concurring) (citing *Coady* for the proposition that "mandamus will not lie" in challenges to the denial of parole and arguing that the court need not have considered the claims before it at all).

*Id.* at 209 n.4.

This Court recognizes that the *Roman* Court also did not have the benefit of *Toland* and other Commonwealth Court decisions in determining not to overrule *DeFoy*. Nevertheless, a federal district court cannot decide to not follow appellate court precedent simply because it may be wrong. To the contrary, "[r]especting *stare decisis* means sticking to some wrong decisions. The doctrine rests on the idea, as Justice Brandeis famously wrote, that it is usually 'more important that the applicable rule of law be settled than that it be settled right.'" *Kimble v. Marvel Entmt., LLC*, 576 U.S. 446, 455 (2015)

(quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (dissenting opinion)).

In conclusion, if the Court were to not follow *DeFoy*, Mathis's habeas claims pertaining to his parole denial in May 2022 would be dismissed for the failure to exhaust because he did not file a petition for allowance of appeal from the Commonwealth Court's decision to the Pennsylvania Supreme Court. *See, e.g., Williams v. Wynder*, 232 F. App'x 177, 181 (3d Cir. 2007) (unpublished) (concluding that, to fully exhaust a challenge to the Parole Board's decision to revoke parole, a habeas petitioner must seek allowance of appeal in the Pennsylvania Supreme Court after an adverse decision by the Commonwealth Court). In addition, Mathis's other parole denials prior to August 2024, to the extent they are not moot, would also be dismissed for the failure to exhaust because Mathis never filed a petition for mandamus with the Commonwealth Court. For the same reason, Mathis's challenge to his August 2024 parole denial would be dismissed for his failure to petition for mandamus with the Commonwealth Court before filing his amended habeas petition. Nonetheless, as this Court must follow *DeFoy*, Mathis did not need to fully exhaust his challenges to his parole denials through the state courts, and the Court will consider the merits of his challenge to his August 2024 parole denial here.

## C.    The Merits

Mathis has not established that the August 20, 2024, denial of parole amounted to an unreasonable exercise of the Parole Board's discretion. Although Mathis argues that the Parole Board acted arbitrarily, he has not shown that it based its decision on arbitrary or impermissible criteria in violation of his substantive due process rights. Instead, Mathis is merely arguing that he disagrees with the grounds upon which the Parole Board relied to deny him parole.

The Parole Board has vast discretion to refuse or deny parole. *See* 61 Pa. C.S. §6137(a) (stating that, *inter alia*, the Parole Board "may release on parole any offender to whom the power to parole is granted to the board by this chapter, . . . whenever in its opinion: (i) The best interests of the offender justify or require that the offender be paroled. (ii) It does not appear that the interests of the Commonwealth will be injured by the offender's parole"). The record clearly reflects that the Parole Board based its parole determination on factors that it is statutorily required to consider in accordance with 61 Pa. C.S. §6135; *see McGinnis v. Royster*, 410 U.S. 263, 277 (1973) (holding that there is a "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's conduct and

his rehabilitative progress before he is eligible for parole"). Under Section 6135, the Parole Board must consider:

> (1) The nature and circumstances of the offense committed.
>
> (2) Any recommendations made by the trial judge and prosecuting attorney.
>
> (3) The general character and background of the inmate.
>
> (4) Participation by an inmate sentenced after February 19, 1999, and who is serving a sentence for a crime of violence as defined in 42 Pa. C.S. §9714(g) (relating to sentences for second and subsequent offenses) in a victim impact education program offered by the Department of Corrections.
>
> (5) The written or personal statement of the testimony of the victim or the victim's family submitted under section 6140 (relating to victim statements, testimony and participation in hearing).
>
> (6) The notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available.
>
> (7) The conduct of the person while in prison and his physical, mental and behavioral condition and history, his history of family violence and his complete criminal record.

61 Pa. C.S. §6135(a)(1)–(7).

Mathis has not directed the Court to any factor relied upon by the Parole Board that could be described as conscience shocking or deliberatively indifferent. Mathis disputes the Parole Board's risk assessment and argues that it is "unfounded, miscategorized, and unproven." (Doc. 16 at

2.) He points to aspects of his incarceration such as his ability to work outside the prison, his remaining misconduct free for two (2) decades, and the DOC's recommendation that he be paroled since 2014. (*Id.* at 2–3.) He also claims to have received an "independent merit system" score that "suggests parole." (*Id.* at 3.) Although these points are surely commendable and indicative of an individual moving in the right direction, they do not show that the Parole Board violated Mathis's due process rights in denying parole.

The Court recognizes that the Parole Board may not base its decision upon an inaccurate factual predicate. *See Gambino v. Morris*, 134 F.3d 156, 162 (3d Cir. 1998) (concluding that United States Parole Commission did not have rational basis to find, as ground for denying parole, that prisoner seeking parole was a member of an organized crime family simply because of a familial-relationship between the applicant and organized crime family member (citing *Campbell v. United States Parole Comm'n*, 704 F.2d 106, 109 (3d Cir. 1983))); *Campbell*, 704 F.2d at 109 ("[t]he Commission may not base its judgment as to parole on an inaccurate factual predicate."). However, Mathis has not shown that the Parole Board's risk assessment was factually incorrect. Instead, he has identified the reasons why he disagrees and disputes its risk assessment. Even his references to his "independent merit system" score does not definitively state he needed to be paroled,

instead it only "suggests parole." (Doc. 16 at 2–3.) As such, Mathis has failed to show that the Parole Board's reference to his risk to the community is conscience shocking.

Mathis's challenge to the Board's reference to the nature of the crime as a reason to deny parole is also unavailing. In the first instance, the Board's consideration of the nature and circumstances of Mathis's crimes is not only permissible but required. *See* 61 Pa. C.S. §6135(a)(1). Additionally, even if Mathis is correct that his involuntary manslaughter sentence had expired, he has not demonstrated that his involuntary manslaughter conviction is the "crime" mentioned in the Parole Board's denial. Instead, he is purely speculating that the Parole Board denied parole because of that conviction. Moreover, he ignores the facts of the other offenses to which he was found guilty. Nonetheless, to the extent that the Parole Board implicitly referenced his involuntary manslaughter conviction, Mathis has not shown that doing so was improper or rises to the level of conscience-shocking behavior that could give rise to a substantive due process claim. *See Ralston v. Dep't of Parole Prob.*, No. 12-cv-1844, 2015 WL 1542480, at *5 (W.D. Pa. Apr. 7, 2015) (citing *Gordon v. Wenerowicz*, No. 10-cv-1257, 2011 WL 5509538, at *4 (M.D. Pa. Nov. 10, 2011)). Therefore, because Mathis has failed to meet his burden of demonstrating that the Parole Board violated his constitutional

rights in denying parole in August 20, 2024, the Court will deny the instant Section 2254 petition.[6]

### D.    Certificate of Appealability

Pursuant to 28 U.S.C. §2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). Because reasonable jurists could not disagree with the resolution of this petition, there is no basis for the issuance of a COA. Thus, the Court will decline to issue a certificate of appealability, as Mathis has failed to demonstrate "a substantial

---

[6] To the extent that Mathis's challenges to the prior denials of parole were not mooted by subsequent parole hearings and determinations, Mathis also failed to show the Parole Board violated his substantive due process rights as to those denials.

- 30 -

showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).[7]

## IV.    CONCLUSION

In accordance with the foregoing, the Court will permit Mathis to amend his Section 2254 petition to include a due process challenge to his August 20, 2024 parole denial. The Court will also deny Mathis's habeas petition and decline to issue a certificate of appealability. An appropriate Order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 2/18/25
23-0225-01

---

[7] There is also no basis to hold an evidentiary hearing because Mathis has not met the requirements for a hearing established in Section 2254(e)(2).